Steven F. Werth (CA Bar No. 205434)
*steven.werth@gmlaw.com*
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 213.617.5210
Facsimile: 954.771.9264

Counsel for Howard M. Ehrenberg,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>626 HOSPICE, INC.,<br><br>Debtor. | Case No. 2:22-bk-12904-SK<br><br>Chapter 7<br><br>Adversary No.: |
| HOWARD M. EHRENBERG, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>NATASHA GILL,<br><br>Defendant. | **COMPLAINT TO AVOID AND RECOVER AVOIDABLE TRANSFERS**<br><br>Place:    255 E. Temple Street<br>Courtroom 1575<br>Los Angeles, CA 90012<br>Hon. Sandra R. Klein |

Plaintiff Howard M. Ehrenberg, solely in his capacity as chapter 7 trustee ("Trustee") of the bankruptcy estate of 626 Hospice, Inc. ("Debtor") brings this adversary proceeding against Natasha Gill, an individual, and alleges as follows:

## INTRODUCTION

1.    This suit seeks the avoidance and recovery of transfers made by the Debtor to Natasha Gill in the four-year period prior to May 25, 2022 (the "Petition Date"), the date the Debtor commenced the above-captioned bankruptcy case, and also the avoidance and

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1  recovery of four transfers made after the Petition Date.

2      2.      The transfers at issue total $1,749,198, which includes the four post-Petition

3  Date transfers, and are referred to below as the "Four-Year Transfers".

4      3.      The Four-Year Transfers consist of two components:  (i) transfers made by

5  the Debtor from its bank account at Citibank ("Account 4716") to Natasha Gill and

6  California Hospice Management Group, Ltd. a California Corporation ("California

7  Hospice"), in the aggregate amount of $567,963.71 (the "Direct Transfers"), and (ii)

8  checks that the Debtor received from third parties, made out to "626 Hospice", that should

9  have been deposited into Account 4716, but were not.  Instead, Natasha Gill and her father

10 Gladwin Gill ("Mr. Gill") deposited those checks into the bank accounts of California

11 Hospice, which did business as "626 Hospice".  This allowed Mr. Gill and Natasha Gill to

12 divert 114 checks totaling $1,181,235 (the "Diverted Transfers") out of reach of the

13 Debtor's creditors.

14     4.      The Debtor, operated by Natasha Gill its Chief Executive Officer, made the

15 Four-Year Transfers for the purpose of hindering, delaying, and defrauding the Debtor's

16 creditors.  Those creditors included the U.S. Department of Health and Human Services

17 ("HHS") which is owed $2.2 million relating to Medicare overpayments made as early as

18 2018, and the IRS which is owed $207,000 relating to unpaid taxes from 2020.

19     5.      The Trustee requests that this Court grant relief that will return the Four-

20 Year Transfers to the Debtor's estate ("Estate").  The Trustee seeks avoidance and recovery

21 of the Four-Year Transfers under 11 U.S.C. §§ 544, 548, 549, and 550, and California

22 Civil Code § ("CC") 3439.04 et seq.

23                    **JURISDICTION AND VENUE**

24     6.      This is an adversary proceeding, pursuant to Federal Rule of Bankruptcy

25 Procedure, which relates to the Chapter 7 proceeding captioned In re 626 Hospice, Inc.,

26 Case No. 2:22-bk-12904-SK (Bankr. C.D. Cal., Los Angeles Division).

27     7.      This Court has subject matter jurisdiction over this action pursuant to section

28 28  U.S.C. § 1334(b) and 28 U.S.C. § 157(a), in that this adversary proceeding arises in,

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1 arises under, and/or relates to Debtor's chapter 7 case.

2     8.    This adversary proceeding is a core proceeding under section 157(b)(2) of
3 Title 28 of the United States Code, such that this Court has jurisdiction to hear and
4 determine this proceeding and to enter an appropriate order and judgment. The Trustee
5 consents to entry of a final order or judgment by this Court.

6     9.    This Court is the proper venue for this adversary proceeding pursuant to 28
7 U.S.C. § 1409(a) because the Debtor's chapter 7 case is pending in this judicial district.

8 **PARTIES**

9     10.   The Trustee is the duly appointed, authorized, and acting chapter 7 trustee
10 for the Estate.

11     11.   The Debtor commenced a voluntary bankruptcy case under Chapter 11 of the
12 United States Code (the "Bankruptcy Code") on May 25, 2022. Subsequently, the Court
13 converted this case to one under Chapter 7 of the Bankruptcy Code.

14     12.   The Trustee was appointed as chapter 7 trustee of the Estate on August 12,
15 2022, and he has served in that capacity since.

16     13.   Defendant Natasha Gill is an individual who at all times relevant to this
17 complaint has resided in Los Angeles County, California. Natasha Gill is the daughter of
18 Mr. Gill and Amelou Gill. At all relevant times, Natasha Gill was an officer of the Debtor
19 and the Vice-President of California Hospice. As of the Petition Date, Natasha Gill was
20 the Debtor's CEO.

21 **GENERAL ALLEGATIONS**

22 **I.   Debtor's Operations**

23     14.   The Debtor was formed on May 16, 2011.

24     15.   At the time of its formation, Mr. Arthur Mkrtchyan ("Mr. Mkrtchyan")
25 possessed a 100% equity interest in the Debtor.

26     16.   The Debtor entered into a provider agreement ("Provider Agreement") with
27 the Secretary of the HHS, effective October 28, 2014. This allowed the Debtor to provide
28 health care services to Medicare beneficiaries under Medicare provider number 75-1645.

3

17.    The Provider Agreement allowed the Debtor to provide specific types of covered hospice care (routine home care; continuous home care; inpatient respite care) to patients and then submit an invoice for those services to the HHS for reimbursement. Reimbursement then occurred through an administrative contractor for the HHS, which in the instance of the Debtor was National Government Services.

18.    Hospice billing and reimbursement is governed by 42 U.S.C. §§ 1395 and certain Code of Federal Regulations sections ("CFR").  Under those regulations, a hospice provider provides covered services and, from time to time, submits invoices to HHS for reimbursement.  HHS pays those invoices as they are submitted, but all HHS payments are subject to a year-end review to determine whether the payments have exceeded a cap established in the CFR.  CFR 418.308(a).  After a billing year ends, a hospice provider submits a "Cap Determination Notice" to the administrative contractor, who then determines whether the hospice has been over or under-reimbursed.  CFR 418.308(c).  If the administrator determines the provider was over-reimbursed, it will notify the hospice provider that the excess amount must be refunded.

19.    Around May 21, 2018, American Academy Of Palliative Care Services, Inc., a California corporation ("American Academy"), a company controlled and managed by Mr. Gill, entered into a purchase agreement with Mr. Mkrtchyan to acquire Mr. Mkrtchyan's 100% equity interest in the Debtor.

20.    On May 20, 2018, Mr. Gill, in his capacity as manager of American Academy, and Mr. George Christie ("Mr. Christie") entered into a Memorandum of Understanding ("MOU") pursuant to which Mr. Christie agreed to contribute $300,000 for the purpose of purchasing the shares of the Debtor, and operating the Debtor, and in return would receive a 50% interest in the Debtor.  In the MOU, Mr. Gill agreed to contribute his full time, efforts, and 20 years of experience in the hospice industry towards the operation of the Debtor.

21.    On June 6, 2018, the Debtor filed a Statement of Information with the California Secretary of State.  That statement identified Natasha Gill as the Secretary and

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1   CFO of the Debtor. That statement also identified Yeota Christie—the daughter of Mr.

2   Christie--as the Debtor's CEO and Director.

3       22.    At all times after Mr. Gill acquired his interest in the Debtor, Mr. Gill

4   exercised control over the Debtor either directly or through Natasha Gill or Amelou Gill.

5       23.    At all relevant times, Natasha Gill and Amelou Gill were involved in the day

6   to day activities of the Debtor.

7       24.    On February 1, 2021, Yeota Christie sent a notice of resignation to the

8   Debtor, stating that she was resigning as President of the Debtor effective as of that day.

9       25.    Subsequently, Natasha Gill became the Debtor's CEO.

10      26.    The Debtor's primary bank account was with Citibank, and had the last four

11  digits 4716—the Account 4716 mentioned above.

12      27.    During the time that Mr. Gill and Natasha Gill operated the Debtor, Mr. Gill

13  and Natasha Gill utilized Account 4716 as the sole business account for the Debtor.

14      28.    On June, 22, 2018, Mr. Gill formed California Hospice.

15      29.    On October 19, 2018, California Hospice filed a Statement of Information

16  with the California Secretary of State. That statement identified Mr. Gill as California

17  Hospice's CEO, CFO, and Secretary.

18      30.    On April 25, 2019, Mr. Gill opened a business checking account for

19  California Hospice at Bank of America, with the last four digits 1578 ("Account 1578").

20      31.    The name of the owner of Account 1578, as identified on the signature card

21  for that account, was "CALIFORNIA HOSPICE MANAGEMENT GROUP, LTD DBA

22  626 HOSPICE".

23      32.    On May 7, 2019, Mr. Gill opened a business checking account for California

24  Hospice at Bank of America, with the last four digits 3756 ("Account 3756").

25      33.    The name of the owner of Account 3756, as identified on the signature card

26  for that account, was "CALIFORNIA HOSPICE MANAGEMENT GROUP, LTD DBA

27  NEXGEN STEM CELL THERAPY".

28      34.    On March 13, 2020, Natasha Gill signed a business signature card relating to

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

Account 1578, in which she identified herself as California Hospice's Vice President.

**II.     The Diverted Transfers**

35.     From April 25, 2019, through November 30, 2020, the Debtor received 40 checks from various entities, the aggregate value of which was $420,878.09, which Mr. Gill and Natasha Gill deposited into Account 1578 (the "Account 1578 Deposits").

36.     Each of the checks comprising the Account 1578 Deposits was made out to "626 Hospice, Inc." or "626 Hospice Inc."

37.     The Account 1578 Deposits consist of the following checks:

| Check Date | Issuer | Amount |
| --- | --- | --- |
| 4/2/19 | HPN – Regal Medical Group – Claims | $234.05 |
| 4/9/19 | L.A. Care Health Plan | $6,954.77 |
| 4/24/19 | L.A. Care Health Plan | $30,061.63 |
| 4/30/19 | HPN – Regal Medical Group – Claims | $5,851.25 |
| 5/16/19 | California Hospital Medical Center – Los Angeles | $5,149.76 |
| 5/21/19 | L.A. Care Health Plan | $16,552.80 |
| 5/23/19 | CALMEDHCLA | $11,100.02 |
| 5/31/19 | HPN – Regal Medical Group – Claims | $3,750.00 |
| 6/18/19 | Blue Shield California - Promise Health Plan | $3,042.65 |
| 6/26/19 | L.A. Care Health Plan | $22,806.08 |
| 7/2/19 | HPN – Regal Medical Group – Claims | $5,701.52 |
| 7/19/19 | CALMEDHCLA | $5,701.52 |
| 7/22/19 | L.A. Care Health Plan | $29,091.90 |
| 8/21/19 | L.A. Care Health Plan | $23,207.12 |
| 8/27/19 | L.A. Care Health Plan | $5,701.52 |
| 9/23/19 | CALMEDHCLA | $5,701.52 |
| 9/23/19 | L.A. Care Health Plan | $28,507.33 |
| 10/1/19 | HPN – Regal Medical Group – Claims | $7,750.00 |

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

| | | |
|---|---|---|
| 10/4/19 | State of California – Bank & Corp Tax Refund | $831.00 |
| 10/21/19 | L.A. Care Health Plan | $22,070.40 |
| 10/22/19 | L.A. Care Health Plan | $5,517.60 |
| 10/29/19 | HPN – Regal Medical Group – Claims | $3,750.00 |
| 10/29/19 | HPN – Regal Medical Group – Claims (not a duplicate of above) | $3,750.00 |
| 10/29/19 | CALMEDHCLA | $5,517.60 |
| 11/21/19 | CALMEDHCLA | $5,701.52 |
| 11/21/19 | L.A. Care Health Plan | $28,507.60 |
| 11/22/19 | Southern California Healthcare System, Inc. dba Southern California Hospital at Culver City | $6,704.12 |
| 11/26/19 | HPN – Regal Medical Group – Claims | $7,750.00 |
| 12/23/19 | L.A. Care Health Plan | $28,389.75 |
| 12/24/19 | CALMEDHCLA | $5,517.60 |
| 12/24/19 | CALMEDHCLA (not a duplicate of above) | $5,517.60 |
| 12/27/19 | HPN – Regal Medical Group – Claims | $6,300.45 |
| 12/30/19 | Southern California Healthcare System, Inc. dba Southern California Hospital at Culver City | $5,517.60 |
| 1/21/20 | CALMEDHCLA | $5,785.53 |
| 1/22/20 | L.A. Care Health Plan | $30,462.46 |
| 1/24/20 | Southern California Healthcare System, Inc. dba Southern California Hospital at Culver City | $5,785.53 |
| 1/28/20 | HPN – Regal Medical Group – Claims | $7,250.00 |
| 2/21/20 | Southern California Healthcare System, Inc. dba Southern California Hospital at Culver City | $5,701.52 |
| 2/24/20 | L.A. Care Health Plan | $29,026.67 |

| 3/3/20 | HPN – Regal Medical Group – Claims | $7,750.00 |
| **TOTAL** | | **$420,878.09** |

38.    From March 20, 2020, through October 12, 2022, the Debtor received 74 checks from various entities, the aggregate value of which was $760,357.28, which Mr. Gill and Natasha Gill deposited into Account 3756 (the "Account 3756 Deposits").

39.    Of the Account 3756 Deposits, the Debtor received four after the Petition Date.  Mr. Gill and Natasha Gill deposited those four checks, which should have been deposited into the Debtor's Debtor-in-Possession operating account, into Account 3756.

40.    The Account 3756 deposits consist of the following checks, all of which were made out to "626 Hospice, Inc., "626 Hospice Inc.," or "626 Hospice":

| Check Date | Issuer | Amount |
| --- | --- | --- |
| 3/6/20 | Blue Shield California - Promise Health Plan | $4.479.12 |
| 3/23/20 | L.A. Care Health Plan | $27,061.35 |
| 3/27/20 | HPN – Regal Medical Group – Claims | $7.250.00 |
| 4/3/20 | Blue Shield California - Promise Health Plan | $7,320.34 |
| 4/22/20 | L.A. Care Health Plan | $28,927.65 |
| 4/28/20 | HPN – Regal Medical Group – Claims | $7.750.00 |
| 5/6/20 | Blue Shield California - Promise Health Plan | $5,846.45 |
| 5/13/20 | L.A. Care Health Plan | $22,395.60 |
| 5/21/20 | L.A. Care Health Plan | $5,598.90 |
| 5/29/20 | HPN – Regal Medical Group – Claims | $7,500.00 |
| 6/5/20 | Blue Shield California - Promise Health Plan | $5,785.53 |
| 6/8/20 | L.A. Care Health Plan | $28,927.65 |
| 6/26/20 | HPN – Regal Medical Group – Claims | $7,750.00 |
| 7/7/20 | Blue Shield California - Promise Health Plan | $8,668.72 |
| 7/7/20 | L.A. Care Health Plan | $5.598.90 |

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

| 7/8/20 | L.A. Care Health Plan | $22,395.60 |
|---|---|---|
| 7/16/20 | 626 Hospice, Inc. (from Account 4716 - memo line states "EXP Account") | $11,000.00 |
| 7/28/20 | HPN – Regal Medical Group – Claims | $7,500.00 |
| 8/5/20 | Anthem | $76.24 |
| 8/7/20 | Blue Shield California - Promise Health Plan | $13,105.87 |
| 8/20/20 | L.A. Care Health Plan | $5,785.53 |
| 8/31/20 | L.A. Care Health Plan | $23,142.12 |
| 9/1/20 | HPN – Regal Medical Group – Claims | $7,750.00 |
| 9/4/20 | Blue Shield California - Promise Health Plan | $6,577.69 |
| 9/11/20 | Blue Shield California - Promise Health Plan | $5,785.53 |
| 9/22/20 | L.A. Care Health Plan | $5,785.53 |
| 9/23/20 | L.A. Care Health Plan | $23,192.12 |
| 9/29/20 | HPN – Regal Medical Group – Claims | $3,250.00 |
| 10/2/20 | Westguard Insurance Company | $1,213.18 |
| 9/21/20 | Centene Management Company LLC | $20.61 |
| 10/6/20 | Blue Shield California - Promise Health Plan | $11,197.80 |
| 10/21/20 | L.A. Care Health Plan | $27,994.50 |
| 10/30/20 | HPN – Regal Medical Group – Claims | $3,750.00 |
| 11/27/20 | L.A. Care Health Plan | $28,977.65 |
| 12/2/20 | HealthNet | $2,125.26 |
| 12/4/20 | HPN – Regal Medical Group – Claims | $3,875.00 |
| 12/4/20 | Blue Shield California - Promise Health Plan | $5,598.90 |
| 12/8/20 | Blue Shield California - Promise Health Plan | $5,598.90 |
| 12/10/20 | Westguard Insurance Policy | $68.00 |
| 12/23/20 | HealthNet | $7,084.20 |
| 12/29/20 | HPN – Regal Medical Group – Claims | $3,750.00 |

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

| 12/31/20 | L.A. Care Health Plan | $11,197.80 |
|---|---|---|
| 1/1/21 | L.A. Care Health Plan | $16,796.70 |
| 1/8/21 | Blue Shield California - Promise Health Plan | $5,785.53 |
| 1/20/21 | HealthNet | $6,825.24 |
| 1/29/21 | L.A. Care Health Plan | $5,785.53 |
| 2/2/21 | L.A. Care Health Plan | $23,142.12 |
| 2/2/21 | HPN – Regal Medical Group – Claims | $3,875.00 |
| 2/5/21 | Blue Shield California - Promise Health Plan | $5,785.53 |
| 2/10/21 | HealthNet | $5,785.53 |
| 3/5/21 | L.A. Care Health Plan | $5,785.53 |
| 3/10/21 | HealthNet | $5,225.64 |
| 3/30/21 | Blue Shield California - Promise Health Plan | $5,225.64 |
| 3/30/21 | L.A. Care Health Plan | $31,353.84 |
| 4/2/21 | L.A. Care Health Plan | $1,195.60 |
| 4/5/21 | L.A. Care Health Plan | $1,356.64 |
| 4/28/21 | HealthNet | $5,936.81 |
| 5/11/21 | L.A. Care Health Plan | $26,811.40 |
| 5/21/21 | Blue Shield California - Promise Health Plan | $5,936.81 |
| 5/26/21 | HealthNet | $5,795.30 |
| 6/2/21 | Gardena Hospital LP | $150.00 |
| 6/9/21 | L.A. Care Health Plan | $23,081.20 |
| 6/11/21 | Blue Shield California - Promise Health Plan | $5,936.81 |
| 6/23/21 | HealthNet | $5,936.81 |
| 7/5/21 | L.A. Care Health Plan | $23,747.24 |
| 7/9/21 | Blue Shield California - Promise Health Plan | $5,745.30 |
| 7/27/21 | HPN – Regal Medical Group – Claims | $35,185.59 |
| 7/29/21 | L.A. Care Health Plan | $17,285.90 |

| 8/26/21 | L.A. Care Health Plan | $11,873.62 |
|---|---|---|
| 12/21/21 | L.A. Care Health Plan | $5,745.30 |
| | **BANKRUPTCY PETITION FILED MAY 22, 2022** | |
| 7/25/22 | L.A. Care Health Plan | $5,992.61 |
| 7/27/22 | health net | $5,799.30 |
| 8/24/22 | health net | $5,605.99 |
| 10/12/22 | health net | $11,208.98 |
| **TOTAL** | | **$760,357.28** |

41.     The total of the Account 1578 Deposits and the Account 3756 Deposits—the Diverted Transfers--is $1,181,235.37.  This includes a $11,000 check written by the Debtor on July 16, 2020, from Account 4716, made out to "626 Hospice, Inc." which Mr. Gill and Natasha Gill  deposited into Account 3756—a transfer which is both (i) a check to the Debtor that should have been deposited in Account 4716, and (ii) a transfer from Account 4716 to Account 3756.

42.     Mr. Gill and Natasha Gill prevented the Debtor from receiving $1,181,235.37 which belonged to it, and of that amount, diverted $28,606 out of the post-petition Debtor's estate.  Mr. Gill and Natasha Gill did this during a time that the Debtor owed HHS on excess reimbursements the Debtor had already received, and would have to return as soon as HHS determined the precise overpayment amount.

43.     National Government Services sent its first overpayment notice to the Debtor on April 5, 2019, stating that the Debtor had received a Medicare overpayment of $149,100.09, which covered the year ending September 30, 2018.   The Debtor did not appeal this overpayment determination.

44.     National Government Services sent a second overpayment notice to the Debtor on June 5, 2020, stating that the Debtor had received a Medicare overpayment of $565,818.82, which covered the year ending September 30, 2019.  The Debtor did not

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1 appeal this overpayment determination.

2    45.    National Government Services sent a third overpayment notice to the Debtor

3 on December 3, 2020, stating the Debtor had received a Medicare overpayment of

4 $31,562.18, which related to the year ending September 30, 2018.  A fourth notice of

5 overpayment followed on March 30, 2021 ($575,233), with another on August 6, 2021

6 ($43,312.66), October 29, 2021 ($55,566.68), April 5, 2022 ($522,177.07), and a final one

7 on June 7, 2022 ($858,644.93), which covered the year prior to September 30, 2021.

8    46.    The Debtor repaid only a fraction of the above-identified amounts owed to

9 HHS.

10    47.    HHS filed a proof of claim in the Debtor's case, stating that as of the Petition

11 Date, the Debtor owed it in excess of $2.2 million.

12    48.    The Debtor also failed to file tax returns for 2020, 2021, and 2022.  The IRS

13 filed a proof of claim in the Debtor's bankruptcy case, stating that it is owed at least

14 $230,000 based on estimated taxes owing during the 2020, 2021, and 2022 tax year.

15    49.    At the time Mr. Gill and Natasha Gill made the Diverted Transfers, the

16 Debtor was also making improper kickback payments to persons who had referred patients

17 to the Debtor which then allowed the Debtor to submit invoices to Medicare for

18 reimbursement.  For these kickback payments, the Debtor utilized Account 1578 and

19 Account 3756.

20    50.    One of the persons to whom Mr. Gill and Natasha Gill made transfers to

21 during the Four-Year Period was Mr. John Kosolcharoen.  Mr. Kosolcharoen received

22 $26,300 of the Diverted Transfers in his own name during the Four-Year Period, via

23 transfers out of Account 3756.  The Debtor also transferred $100,000 to Mr. Kosolcharoen

24 from Account 3756 to his dba "Infinity Marketing" and additional transfers also occurred

25 from accounts of affiliated companies.  On May 8, 2023, Mr. Kosolcharoen pled guilty in

26 his criminal case before the U.S. District Court for the Central District of California, Case

27 No. SA CR 16-0094-ODW, to referring compounded medications for pharmacies in

28 exchange for kickbacks.

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

51.    During the time that Mr. Gill and Natasha Gill were making the Diverted Transfers, they transferred large amounts from Account 4716 to themselves and companies they controlled.  Mr. Gill received a total of $628,974 during the Four-Year Period, either directly or to companies he controlled.  Amelou Gill, the wife of Mr. Gill and mother of Natasha Gill, received $417,380 either directly or through her company Palliative Care Strategic Services.

### III.    The Direct Transfers

52.    During the Four-Year Period, Mr. Gill and Natasha Gill made transfers directly from Account 4716 to either themselves directly, or to companies under their control.

53.    During the Four-Year Period, and separate from the Diverted Transfers, the Debtor transferred $401,286.61 to California Hospice by making transfers of two kinds from Account 4716 to Accounts 1578 and 3756.  The first type of transfer was to "California Hospice" and was deposited into either Account 1578 or Account 3756.  During the Four-Year Period, the Debtor transferred a total of $341,516.61 this way.  Of this amount, $166,590.59 occurred during the two-year period prior to the Petition Date.  The second type of transfer was to "NexGen" and all of those transfers were deposited into Account 3756.  During the Four-Year Period, the Debtor made a total of $59,770 transfers in this manner, of which $19,750 occurred during the two-year period prior to the Petition Date.

54.    During the Four-Year Period, the Debtor transferred $166,677.10 to Natasha Gill directly.  Of these transfers to Natasha Gill, $63,370.17 occurred during the two-year period prior to the Petition Date (the "Two-Year Period"), as follows:

| Payee | Date | Amount |
|---|---|---|
| Natasha Gill | 6/8/2020 | $1,898.70 |
| Natasha Gill | 6/22/2020 | $1,898.70 |
| Natasha Gill | 7/8/2020 | $2,516.07 |

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

| | | |
|---|---|---|
| Natasha Gill | 7/22/2020 | $2,546.82 |
| Natasha Gill | 8/7/2020 | $2,546.82 |
| Natasha Gill | 8/21/2020 | $2,546.82 |
| Natasha Gill | 9/8/2020 | $2,546.82 |
| Natasha Gill | 9/22/2020 | $2,546.82 |
| Natasha Gill | 10/5/2020 | $300.00 |
| Natasha Gill | 10/8/2020 | $2,546.82 |
| Natasha Gill | 10/27/2020 | $2,546.82 |
| Natasha Gill | 11/6/2020 | $2,546.82 |
| Natasha Gill | 12/20/2020 | $300.00 |
| Natasha Gill | 12/22/2020 | $2,546.82 |
| Natasha Gill | 1/8/2021 | $2,544.61 |
| Natasha Gill | 1/22/2021 | $2,544.61 |
| Natasha Gill | 2/8/2021 | $2,544.61 |
| Natasha Gill | 2/22/2021 | $2,544.61 |
| Natasha Gill | 3/8/2021 | $2,544.61 |
| Natasha Gill | 3/22/2021 | $2,544.61 |
| Natasha Gill | 4/8/2021 | $2,544.61 |
| Natasha Gill | 4/22/2021 | $2,544.61 |
| Natasha Gill | 5/7/2021 | $2,544.61 |
| Natasha Gill | 5/21/2021 | $2,544.61 |
| Natasha Gill | 6/8/2021 | $2,544.61 |
| Natasha Gill | 6/22/2021 | $2,544.61 |
| Natasha Gill | 12/8/2021 | <u>$3,000.00</u> |

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

**TOTAL    $63,370.17**

55.    During the Four-Year Period, the Debtor made the following additional direct transfers to Natasha Gill:

| Payee | Date | Amount |
|-------|------|--------|
| Natasha Gill | 7/20/2018 | $600.00 |
| Natasha Gill | 8/6/2018 | $1,000.00 |
| Natasha Gill | 8/21/2018 | $1,500.00 |
| Natasha Gill | 9/6/2018 | $2,500.00 |
| Natasha Gill | 9/ ???? / 2018 | $500.00 |
| Natasha Gill | 9/19/2018 | $2,500.00 |
| Natasha Gill | 10/3/2018 | $2,500.00 |
| Natasha Gill | 10/17/2018 | $2,500.00 |
| Natasha Gill | 11/2/2018 | $2,500.00 |
| Natasha Gill | 11/20/2018 | $2,500.00 |
| Natasha Gill | 12/6/2018 | $2,500.00 |
| Natasha Gill | 12/21/2018 | $2,500.00 |
| Natasha Gill | 1/7/2018 | $2,500.00 |
| Natasha Gill | 1/21/2019 | $2,500.00 |
| Natasha Gill | 2/5/2019 | $2,500.00 |
| Natasha Gill | 2/20/2019 | $2,500.00 |
| Natasha Gill | 3/6/2019 | $2,500.00 |
| Natasha Gill | 3/19/2019 | $2,500.00 |
| Natasha Gill | 3/20/2019 | $1,000.00 |
| Natasha Gill | 4/3/2019 | $2,500.00 |
| Natasha Gill | 4/ ??/ 19 | $556.16 |
| Natasha Gill | 4/??/19 | $126.12 |
| Natasha Gill | 4/19/2019 | $1,829.75 |

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

| # | | | |
|---|---|---|---|
| 1 | Natasha Gill | 5/3/2019 | $2,538.81 |
| 2 | Natasha Gill | 5/17/2019 | $2,538.81 |
| 3 | Natasha Gill | 6/3/2019 | $2,538.81 |
| 4 | Natasha Gill | 6/19/2019 | $2,538.81 |
| 5 | Natasha Gill | 7/3/2019 | $1,829.75 |
| 6 | Natasha Gill | 7/19/2019 | $1,829.75 |
| 7 | Natasha Gill | 8/2/2019 | $2,538.81 |
| 8 | Natasha Gill | 8/19/2019 | $2,538.81 |
| 9 | Natasha Gill | 9/4/2019 | $2,538.81 |
| 10 | Natasha Gill | 9/19/2019 | $2,538.81 |
| 11 | Natasha Gill | 10/4/2019 | $2,538.81 |
| 12 | Natasha Gill | 10/18/2019 | $2,538.81 |
| 13 | Natasha Gill | 11/4/2019 | $2,538.81 |
| 14 | Natasha Gill | 11/19/2019 | $2,538.81 |
| 15 | Natasha Gill | 12/7/2019 | $1,890.69 |
| 16 | Natasha Gill | 12/22/2019 | $1,890.69 |
| 17 | Natasha Gill | 1/4/2020 | $1,898.70 |
| 18 | Natasha Gill | 1/22/2020 | $1,898.70 |
| 19 | Natasha Gill | 2/7/2020 | $1,898.70 |
| 20 | Natasha Gill | 2/21/2020 | $1,898.70 |
| 21 | Natasha Gill | 3/6/2020 | $1,898.70 |
| 22 | Natasha Gill | 3/23/2020 | $3,700.00 |
| 23 | Natasha Gill | 4/8/2020 | $1,898.70 |
| 24 | Natasha Gill | 4/22/2020 | $1,898.70 |
| 25 | Natasha Gill | 5/8/2020 | $1,898.70 |
| 26 | Natasha Gill | 5/22/2020 | $1,898.70 |
| 27 | | **TOTAL** | **$103,306.93** |
| 28 | | | |

56.     A chart identifying all of the transfers from Account 4716 to the Defendant either directly or to California Hospice, which transfers were for the benefit of Natasha Gill, is as follows:

| Transferee | Two-Year Transfers | Four-Year Transfers |
|---|---|---|
| Natasha Gill | $63,370.17 | $166,677.10 |
| California Hospice | $186,340.59 | $401,286.61 |
| **TOTAL TWO-YEAR DIRECT TRANSFERS** | $249,710.76 | |
| **TOTAL FOUR-YEAR DIRECT TRANSFERS** | | $567,963.71 |

57.     During the Four-Year Period, Mr. Gill and Natasha Gill exploited the U.S. Government program for reimbursement for hospice services by taking advantage of the delay between the receipt of excess Medicare reimbursements, and the HHS determination that the Debtor had overcharged Medicare.  Mr. Gill and Natasha Gill knew that the Debtor could not generate revenue sufficient to pay these bills back - $2.2 million as of the Petition Date to HHS alone—and within one year of acquiring the Debtor began diverting company funds into California Hospice's bank accounts.  Mr. Gill and Natasha Gill used the Diverted Transfers, as well as the Direct Transfers, to pay personal expenses, as well as non-Debtor expenses such as Mr. Gill's loan repayment owed to Mr. Christie, and the balance of the purchase price Mr. Gill owed to Mr. Mkrtchyan—both of whom received significant transfers out of Account 4716 during the Four-Year Period.

58.     Mr. Gill and Natasha Gill made the Four-Year Transfers for the purpose of removing those funds from the Debtor's bank account and making it that much more difficult for HHS to track the Debtor's funds and collect repayment.  Mr. Gill and Natasha Gill also diverted $28,606.88 in post-petition income from the Estate and the Debtor's creditors, and by so doing, committed bankruptcy fraud.

59.     By the time the Debtor commenced its bankruptcy case on May 25, 2022, its

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1    sole asset scheduled consisted of office equipment.  Natasha Gill did not schedule the

2    $28,606.88 receivable that the Debtor was owed by LA Health Care Plan and health net,

3    and when those four checks came in, she deposited that amount into Account 3756 without

4    informing the Court or the Trustee.

5    **IV.    Badges Of Fraud Related To The Four-Year Transfers**

6        60.    Multiple badges of fraud are present with respect to the Four-Year Transfers,

7    including the following:

8    • The Four-Year Transfers were to an insider of the Debtor, as Natasha Gill is

9        the Debtor's CEO, and at all relevant times operated it;

10    • The Debtor retained control of the Four-Year Transfers after they were

11        made, as Natasha Gill used the proceeds from the transfers to pay various

12        non-Debtor expenses including payments to Mr. Mkrtchyan and Mr.

13        Christie, and to third parties to pay for Natasha Gill's personal expenses;

14    • Natasha Gill, by transferring the Direct Transfers to a bank account to which

15        she was a signatory, attempted to conceal that the Four-Year Transfers were

16        made to her or for her benefit, and Natasha Gill concealed these secret

17        accounts from the Bankruptcy Court during this bankruptcy case;

18    • The Four-Year Transfers were made while Mr. Gill was being prosecuted for

19        tax fraud to which he ultimately pled guilty and entered Federal custody in

20        March, 2023;

21    • The Four-Year Transfers were made at a time that Mr. Gill and Natasha Gill

22        were making kickback payments to various third parties who had referred

23        patients to the Debtor so that the Debtor could request reimbursement from

24        Medicare, including the convicted felon John Kosolcharoen;

25    • The Four-Year Transfers consisted of substantially all of the Debtor's assets;

26    • Natasha Gill made false statements, concealed facts, and operated under false

27        pretenses, while making the Four-Year Transfers, and concealed from this

28        Court and the Trustee four post-petition transfers that should have been

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

deposited into the Debtor's bank account;

- Mr. Gill's and Natasha Gill's fraud caused the Debtor to incur significant liabilities to HHS and the IRS, far in excess of the Debtor's ability to repay those liabilities, making the Debtor insolvent during the Four-Year Period;

- The Debtor made the Four-Year Transfers for less than reasonably equivalent value, as the Debtor received no benefit from the Direct Transfers as the only value Mr. Gill and Natasha Gill provided to the Debtor was the perpetuation of the Medicare fraud scheme which resulted in the Debtor incurring significant liabilities it could never repay;

- The Debtor was aware of the debts it owed to HHS and the IRS, and continued to divert receivables that should have been deposited into the Debtor's account to Account 1578 and Account 3756, instead of using those monies to pay the Debtor's debts; and

- Natasha Gill lacked good faith at the time she received the Four-Year Transfers, as she orchestrated the Debtor's Medicare fraud scheme and signed over the Diverted Transfers to a non-debtor account, with her father's assistance.

## **FIRST CLAIM FOR RELIEF**

**(Avoidance Of Four-Year Transfers As Intentionally Fraudulent Transfers Pursuant To 11 U.S.C. § 544(b) And CC 3439.04(a)(1)) and 3439.07)**

61.    The Trustee realleges and incorporates herein by reference each and every allegation contained in the previous paragraphs as though set forth in full.

62.    The Four-Year Transfers were made with the actual intent to hinder, delay, and/or defraud Debtor's creditors.

63.    At all relevant times, the Four-Year Transfers were voidable under CC 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against the Debtor that were and are allowable against the Estate under 11 U.S.C. § 502. These creditors include those creditors who are listed in the Debtor's schedules as holding

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1  undisputed claims or who have filed proofs of claim against the Estate.

2       64.    The Trustee is entitled to an order and judgment under 11 U.S.C. § 544(b)

3  that the Four-Year Transfers that occurred prior to the Petition Date are avoided.

4  **SECOND CLAIM FOR RELIEF**

5  **(Avoidance Of Four-Year Transfers As Constructively Fraudulent Transfers**

6  **Pursuant To 11 U.S.C. § 544(b) And CC 3439.04(a)(2)), 3439.05,  and 3439.07)**

7       65.    The Trustee realleges and incorporates herein by reference each and every

8  allegation contained in the preceding paragraphs as though set forth in full.

9       66.    At the time of the Four-Year Transfers, the Debtor:  (i) was engaged in a

10  business for which the remaining assets of the Debtor were unreasonably small in relation

11  to the business; (ii) intended to incur, or believed or reasonably should have believed that it

12  would incur, debts beyond its ability to pay as they became due; or (iii) the Debtor was

13  insolvent.

14       67.    The Trustee is entitled to an order and judgment under 11 U.S.C. § 544(b)

15  that the Four-Year Transfers that occurred prior to the Petition Date are avoided.

16  **THIRD CLAIM FOR RELIEF**

17  **(Avoidance and Recovery Of Two-Year Transfers As Intentionally Fraudulent**

18  **Transfers Pursuant To 11 U.S.C. § 548(a)(1)(A))**

19       68.    The Trustee realleges and incorporates herein by reference each and every

20  allegation contained in the preceding paragraphs as though set forth in full.

21       69.    The Four-Year Transfers which occurred during the two-year period prior to

22  the Petition Date, totaling $249,710.76 (the "Two-Year Transfers") were made by the

23  Debtor with the actual intent to hinder, delay, or defraud the Debtor's creditors.

24       70.    The Trustee is entitled to an order and judgment under 11 U.S.C.

25  § 548(a)(1)(A) that the Two-Year Transfers are avoided.

26

27

28

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

## FOURTH CLAIM FOR RELIEF

## (Avoidance and Recovery Of Two-Year Transfers As Constructively Fraudulent Transfers Pursuant To 11 U.S.C. § 548(a)(1)(B))

71.     The Trustee realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth in full.

72.     At the time of the Two-Year Transfers, the Debtor:  (i) was insolvent, (ii) was engaged in a business for which its remaining assets were unreasonably small in relation to the business, or (iii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

73.     The Trustee is entitled to an order and judgment under 11 U.S.C. § 548(a)(1)(B) that the Two-Year Transfers are avoided.

## FIFTH CLAIM FOR RELIEF

74.     **(Avoidance Of Post-Petition Transfers Pursuant To 11 U.S.C. § 549)**

75.     The Trustee realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth in full.

76.     After the Petition Date, Mr. Gill and Natasha Gill deposited four checks made out to the Debtor, totaling $28,606.88, into Account 3756 (the "Post-Petition Transfers").

77.     The Trustee is entitled to an order and judgment under 11 U.S.C. § 549 that the Post-Petition Transfers are avoided.

## SIXTH CLAIM FOR RELIEF

## (Recovery Of Transfers Or The Value Thereof Pursuant To 11 U.S.C. § 550)

78.     The Trustee realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth in full.

79.     To the extent that Natasha Gill is not the initial transferee of the Four-Year Transfers she is the immediate or mediate transferee of the initial transferee of such transfers.

80.     The Four-Year Transfers are recoverable from Natasha Gill as the immediate

1    or mediate transferee of the Four-Year Transfers that the Debtor made with the actual

2    intent to hinder, delay, or defraud its creditors.

3        81.    To the extent the Four-Year Transfers are avoided, the Trustee may recover,

4    for the benefit of the Estate, the Four-Year Transfers, or, if the Court so orders, the value

5    of the Four-Year Transfers.

6        **FOR THESE REASONS**, the Trustee prays for judgment against Natasha Gill as

7    follows:

8        **ON THE FIRST CLAIM FOR RELIEF**

9        1.    For a judgment that the Four-Year Transfers are avoided under § 544(b) and

10   and/or providing any other remedy available under applicable law;

11       **ON THE SECOND CLAIM FOR RELIEF**

12       2.    For a judgment that the Four-Year Transfers are avoided under § 544(b) and

13   and/or providing any other remedy available under applicable law;

14       **ON THE THIRD CLAIM FOR RELIEF**

15       3.    For a judgment that the Two-Year Transfers are avoided under

16   § 548(a)(1)(A) and/or providing any other remedy available under applicable law;

17       **ON THE FOURTH CLAIM FOR RELIEF**

18       4.    For a judgment that the Two-Year Transfers are avoided under

19   § 548(a)(1)(B) and/or providing any other remedy available under applicable law;

20       **ON THE FIFTH CLAIM FOR RELIEF**

21       5.    For a judgment that the Post-Petition Transfers are avoided under § 549

22   and/or providing any other remedy available under applicable law;

23       **ON THE SIXTH CLAIM FOR RELIEF**

24       6.    To the extent any of the Four-Year Transfers are avoided, for a judgment that

25   the Trustee may recover, for the benefit of the Estate, such transfer, or, if the Court so

26   orders, the value of such transfer, under 11 U.S.C. § 550(a) against Natasha Gill in the

27   amount identified in paragraph 2 of this Complaint; and

28       **ON ALL CLAIMS FOR RELIEF**

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

7.    For interest as permitted by law from the date of the Four-Year Transfers.

Dated: May 8, 2024                **GREENSPOON MARDER LLP**


By: _____
Steven F. Werth
Attorneys for Howard M. Ehrenberg, Chapter
7 Trustee

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFF<br>HOWARD M. EHRENBERG, Chapter 7 Trustee | DEFENDANT<br>NATASHA GILL, an individual, |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Steven F. Werth (CA Bar No. 205434)<br>**GREENSPOON MARDER LLP**<br>1875 Century Park East, Suite 1900<br>Los Angeles, CA 90067<br>Telephone: (213) 617-5210 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Avoidance and recovery of fraudulent transfers under 11 U.S.C. §§ 544, 548, 549 and 550, and California Civil Code § 3439.04.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001( 1) – Recovery of Money/Property**
☐ 11-Recovery of money/propert y –§542 turnover of property
☐ 12-Recovery of money/property –§547 preference
1 – 13-Recovery of money/property –§548 fraudulent transfer
2 – 14-Recovery of money/property – other (§549 post-petition transfer)

**FRBP 7001 (2) –  Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001( 3) –  Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4 ) –  Objection/ Revocation of Discharge**
☐ 41-Objection/re vocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) –  Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) –  Dischargeability**
☐ 66 -Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 -Dischargeability- §523(a)(5 ), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 -Dischargeability - other

**FRBP 7001(7) –  Injunctive Relief**
☐ 71 -Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 -Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91 -Declaratory judgment

**FRBP 70 01(10) Deter mi nation of Remove d Act ion**
☐ 01 -Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | ☒ Demand $1,749,198 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>626 HOSPICE, INC. | BANKRUPTCY CASE NO.<br>**2:22-bk-12904-SK** | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE<br>Hon. Sandra R. Klein |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*[signature]* | | |
| DATE<br>May 8, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Steven F. Werth | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.