Steven F. Werth (CA Bar No. 205434)
 *steven.werth@gmlaw.com*
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Howard M. Ehrenberg,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>626 HOSPICE, INC.,<br><br>    Debtor.<br><br>―――――――――――――<br>HOWARD M. EHRENBERG, Chapter 7 Trustee,<br><br>    Plaintiff,<br><br>    vs.<br><br>NATASHA GILL, an individual,<br><br>    Defendant. | Case No. 2:22-bk-12904-SK<br><br>Chapter 7<br><br>Adversary No.: 2:24-ap-01102-SK<br><br>**OPPOSITION TO MOTION TO SET ASIDE DEFAULT**<br><br>[Relates To Docket No. 22]<br><br>Date:    August 21, 2024<br>Time:    9:00 a.m.<br> Place    Courtroom 1575<br>           255 East Temple Street<br>           Los Angeles, CA 90012 |

Plaintiff Howard M. Ehrenberg, the chapter 7 trustee ("Trustee") of 626 Hospice, Inc. ("Debtor"), responds to the "Notice Of Motion And Defendant's Motion To Set Aside Default Pursuant To Fed. R. Civ. P. 55(c)" (Docket No. 22, the "Motion"), filed by Natasha Gill, the above-captioned defendant.

**I.
INTRODUCTION**

Natasha Gill is not honest. She signed the Debtor's Petition, Schedules, and

SFW 58281557v1

Statement of Financial Affairs, in which she states that she is the Debtor's CEO and sole equity owner. The Corporate Resolution she signed and filed in the Debtor's bankruptcy case (Bk. Docket No. 23) identifies her as the Debtor's President, Secretary, and sole member of the Debtor's Board of Directors. In her declaration attached to the Motion ("N.G. Decl."), she states she has personal knowledge of the Debtor's ordinary course of business, and the Debtor's transfers made to her. N.G. Decl., ¶¶1, 8. From these statements, one might conclude that Natasha Gill possessed knowledge about the Debtor and its operations.

But that conclusion would be wrong, because Natasha Gill's proposed answer she seeks to file in this case (Exhibit 1 to the Motion, the "Answer") denies all knowledge of the Debtor. Natasha Gill lacks information sufficient to answer almost every allegation in the complaint in this case ("Complaint"). Is she the Debtor's CEO? She does not know. Answer, ¶25. Secretary and CFO? Also unknown. Answer, ¶21. Was Natasha Gill involved in the Debtor's day to day activities? Natasha Gill does not know. Answer, ¶25. Does she know who the Debtor's creditors are? No. Answer, ¶4. Whether the Debtor had a license to provide health care services to Medicare beneficiaries? No. Answer, ¶17. How hospice billing and reimbursement works? Again no. Answer, ¶18. Did the Debtor ever make transfers to her? Unknown. Answer, ¶54.

Natasha Gill, according to the Answer, knows literally nothing about the Debtor. Of course her professed ignorance is false, because her declaration under penalty of perjury directly contradicts that suggestion, as does her declarations signed in the Debtor's bankruptcy case. Natasha Gill is the Debtor's CEO. N.G. Decl., ¶2. That cannot be the basis to allow Natasha Gill to file an answer in which she professes to lack the most basic information about the Debtor's operations. Ms. Gill must prove a meritorious case. Ms. Gill has chosen to ignore the assertions against her, and feign ignorance instead.

Natasha Gill must demonstrate, also, that she did not engage in culpable conduct that led to the default entered against her. Ms. Gill is an attorney. She prepared an answer to the Complaint on the very final day it was due—June 10, 2024—but did not file it, and

did not serve it. If her emails can be believed, she did not even bother to set up a PACER account with the Bankruptcy Court ahead of time so she could electronically file a document. This was the Gill family litigation strategy, adopted by all four members against whom the Trustee commenced adversary proceedings. None of these events—failing to hire an attorney, failing to take action until June 10, failing to file or serve anything timely—were accidents. They were intentional choices.

Worse, Natasha Gill appears to hold herself out as an attorney for other defendants in other adversary proceedings. The email attached as Exhibit 2 to the Motion, sent to Trustee's counsel on June 11, 2024, purports to attach answers by five other defendants. Was Natasha Gill the attorney for these defendants, when she prepared those proposed answers? Four of the five of those defendants are now in default status, and for two of them—Milan Jaiaue and Francesca Nicole Gill Mall--the Court has already entered default judgments. Is Natasha Gill also seeking relief from default for those clients, the same that she is seeking for herself? This exhibit suggests that she may have violated her duty of care to her clients, and continues to violate that duty by not seeking the same relief she seeks for herself.

Natasha Gill fails to satisfy all three of the factors set forth in Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984) to set aside a default. Failure to satisfy any of those factors is grounds to deny the Motion. Natasha Gill is a licensed attorney. She knows what it means to sign a document under penalty of perjury. She knows what a complaint is. She knows that deadlines have meaning. Natasha Gill knew precisely what she was doing when she declined to file an answer to the Complaint.

Further, the Motion does not allege facts constituting defenses to the Complaint. Reopening the litigation prejudices the Trustee, who will suffer more injury prosecuting the Complaint incurring more fees and costs in a bankruptcy case with essentially no cash in it, because Natasha Gill transferred the Debtor's money, including post-petition, into her own private account. The Motion fails under the Falk factors, and should be denied.

## II.

## **BACKGROUND FACTS**

### A.    The Gill Family's Fraudulent Scheme[1]

Natasha Gill is a member of the Gill family, who collectively operate a number of businesses that the Gill family—Natasha, Gladwin, and Amelou--portray in different ways. Some of those businesses are actual operating businesses, such as the Debtor. Some are not operating businesses, such as California Hospice Management Group, Ltd. ("California Hospice").

The Gill family acquired the Debtor, along with a Provider Agreement that allowed the Debtor submit invoices for hospice-related services to the U.S. Government for reimbursement, around May, 2018. While Natasha Gill signed a document in the Debtor's bankruptcy case (Bk. Docket No. 22) stating that she was the sole equity owner of the Debtor, other documents indicate that Gladwin Gill, through a company he controlled, intended to first acquire those shares.

Once the Gill family acquired the Debtor, Gladwin Gill implemented a plan to loot it of all assets. On June 22, 2018, Gladwin Gill formed California Hospice. That entity remained dormant for approximately one year, while Mr. Gill, along with Amelou Gill and Natasha Gill, operated the Debtor. Hospice billing and reimbursement is governed by 42 U.S.C. 1395 and certain Code of Federal Regulations sections. Under those regulations, a hospice provider provides covered services, submits invoices, gets reimbursed, and later, an administrative agent for the HHS—in the Debtor's case, a company called National Government Services--determines if an overpayment was made. The delay between government repayment, and the date the government might notify the provider that an overpayment was made, can be many months.

National Government Services sent its first overpayment notice to the Debtor by a letter dated April 5, 2019, stating that the Debtor had received a Medicare overpayment of

---

[1] The following facts are taken from the Complaint, ¶¶1-60.

**GREENSPOON MARDER LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 954.771.9264

$149,000, which covered the year ending September, 2018. Natasha Gill and Gladwin Gill knew that more of these letters would follow, and they took immediate action. On April 25, 2019, Gladwin Gill opened a Bank of America bank account for California Hospice, with the last four digits 1578 ("Account 1578"). Natasha Gill and Gladwin Gill then began depositing checks made out to the Debtor, into Account 1578, which Bank of America appears to have believed was acceptable, because Account 1578 was in the name of California Hospice "dba 626 Hospice".

On March 13, 2020, Natasha Gill signed a business signature card relating to Account 1578, in which she identified herself as California Hospice's Vice President.

### B. The Diverted Debtor Checks

Beginning in April, 2019, Gladwin Gill and Natasha Gill deposited 39 checks, totaling $444,452.39[2] into Account 1578. Every single one of those checks was made out to 626 Hospice, Inc. They related to Medi-Cal reimbursements. From Account 1578, Natasha and Gladwin diverted the Debtor's funds to pay for personal expenses, and moved funds into other accounts under their control.

On May 7, 2019, Gladwin Gill opened a second account for California Hospice at Bank of America, this one with the numbers ending in 3756 ("Account 3756"). On and after that date, Gladwin Gill and Natasha Gill diverted 74 checks, totaling $760,357.28, into Account 3756. Those checks were also Medi-Cal reimbursements, and also were all made out to 626 Hospice, Inc. From there, Gladwin Gill and Natasha Gill used the funds for their personal use.

Natasha Gill's looting did not stop at the Petition Date. After May 25, 2022, she deposited four checks made out to the Debtor, totaling $28,606, into Account 3756.

### C. Direct Transfers To Or For The Benefit Of Natasha Gill

The Debtor received Medi-Cal reimbursements by check, and received Medicare

---

[2] The Complaint identifies 40 checks totaling $420,878.09. The Trustee later discovered these numbers were incorrect, and in his motion for default judgment filed in this case on June 26, 2024, states that the actual number is 39 checks totaling $444,452.39.

reimbursements by wire. Gladwin Gill and Natasha Gill could not easily divert wire transfers into Account 1578 or Account 3756, so they wrote checks from the Debtor's main account at Citibank, ending in 4716 ("Account 4716") directly to themselves. Natasha transferred $166,667.10 to herself in this manner.

In the four-year period prior to the Petition Date, Mr. Gill and Natasha Gill transferred $401,286.61 by checks made out to California Hospice, written from Account 4716, and deposited into Accounts 1578 and 3756. Those transfers were made for the benefit of both Natasha Gill and Gladwin Gill.

### C. The Adversary Proceeding And Default

Natasha Gill filed a voluntary chapter 11 petition for the Debtor on May 25, 2022, and elected to proceed under Subchapter V. Docket No. 1. Subsequently, the Court converted the case to one under chapter 7 of the Bankruptcy Code. On August 12, 2022, Howard M. Ehrenberg was appointed as the chapter 7 Trustee, and he has served in that capacity since.

The Trustee filed the Complaint on May 8, 2024, giving rise to this adversary proceeding. The Trustee timely served the Complaint, summons, and related pleadings on May 10, 2024 (Adv. Docket No. 3). Pursuant to the Summons, the initial deadline to respond to the Complaint was June 10, 2024.

On June 11, 2024, Natasha Gill sent an email to the Trustee which is attached as Exhibit 2 to the Motion. That email stated: "Dear Mr. Werth, Attached please find copies of Defendants' Answers to Complaint. Thank you." and attached six documents, including the Answer. The Answer identified Natasha Gill as the defendant on the caption page, but all other relevant information on that page was blank, including the adversary proceeding number and the upper-left hand corner which normally indicates who is filing the document. The document also contained an improper proof of service, as it contained a signature block of a party to the litigation—Natasha Gill herself—and was not signed with a holographic signature. The Answer's proof of service was also incorrect, as it stated the document was emailed on June 10, instead of June 11. Nor is service by email proper

SFW 58281557v1                                6

absent consent of the receiving party.

Natasha Gill never filed an answer to the Complaint, despite having plenty of time do so. She filed nothing on June 11-12. On June 13, 2024, at 1:16 p.m., Trustee's counsel sent the following email to Natasha Gill:

> Ms. Gill, I see that for these actions identified in your email, no answer has been filed in any of those adversary proceedings. Tomorrow, the Trustee will be requesting entry of defaults on those actions, and in any other adversary proceeding where answers have not been filed and the deadline to file has expired.

Natasha Gill did not respond to that email, and never did file any answer either for herself or her clients. It was not because of lack of time. The Motion attaches, as Exhibit 3, a series of emails between Natasha Gill and First Legal, which suggests that certain answers were ready to be filed the evening of June 10—three days ahead of schedule. Nor was it because First Legal confirmed the document was filed, as Natasha Gill states (Motion, 4:11), because all emails attached as Exhibit 3 state the opposite: all indicate that no pleading had yet been filed.

On June 14, 2024, the Trustee requested that default be entered in this adversary proceeding (Docket No. 4) and that same day, the Court entered Natasha Gill's default (Docket No. 5).

On June 26, 2024, the Trustee filed a motion for entry of default judgment against Natasha Gill. On June 27, 2024, the Trustee filed a unilateral status report (Docket No. 10) which notified the Court of the prior emails received from Natasha Gill, and stated that those emails contained certain purported answers but none relating to Natasha Gill. That last part was in error, which Trustee's counsel noticed only later: Natasha Gill did email the Answer to Trustee's counsel on June 11, 2024.

Around July 2, 2024, Michael Berger, Esq. contacted Trustee's counsel Steven F. Werth and informed him that he represented Natasha Gill, Amelou Gill, and Gladwin Gill. Mr. Berger requested that the Trustee stipulate to continue the hearing date on his motion for default judgment, which at that point was scheduled for July 17. The Trustee agreed to

that proposal.  The parties then signed a stipulation, and the Court entered an order, continuing the hearing date on the Trustee's motion for entry of default judgment against Natasha Gill to August 7, 2024.

## III

## NATASHA GILL HAS FAILED TO CARRY HER BURDEN TO SET ASIDE THE DEFAULT

### A. Legal Standard

"The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  FRCP 55(c) (made applicable herein by FRBP 7055).  The Ninth Circuit has explained three factors must be satisfied to meet the "good cause" standard of FRCP 55(c):

> To determine "good cause", a court must "consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party … .  This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default.

U.S. v. Signed Pers. Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010) (citations omitted).  "These three factors are commonly referred to as the "*Falk* factors" because they were first articulated in *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam)."  *See* In re Halper, 2019 WL 2762340, at *4 (B.A.P. 9th Cir. June 28, 2019) (unpublished).  And while "judgment by default is a drastic step appropriate only in extreme circumstances" and cases should be decided whenever possible on the merits, the party seeking to vacate the default bears the burden of proof.  *See* Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc., 375 F.3d 922, 926 (9th Cir. 2004).

### B. Natasha Gill Was Culpable Which Led To The Default

"The Ninth Circuit has held that a 'defendant's conduct is culpable for purposes of the *Falk* factors where there is no explanation of the default inconsistent with a devious,

deliberate, willful, or bad faith failure to respond." Halper, 2019 WL 2762340 at *5.  If a defendant "has received actual or constructive notice of the filing of the action and failed to answer, its conduct is culpable." Franchise Holding II, 375 F.3d at 926.

Here, Natasha Gill had actual notice of the Answer deadline.  Ms. Gill even had answers prepared and ready to file the evening of June 10, three days ahead of schedule.  After noticing that no answers had actually been filed, the Trustee specifically notified Natasha Gill of this fact on June 13 and informed her that if she did not file those answers, the Trustee would request entry of a default.  Still, Natasha Gill did not file an answer.  Under controlling Ninth Circuit law, her failure to file a response by the answer deadline was culpable conduct.

Moreover, Natasha Gill's argument that excusable neglect exists is groundless.  First, Ms. Gill never explains why, after instructing First Legal on June 10 to file the Answer, she never bothered to check whether it was actually filed.  She states she "received confirmation" of the filing in the Motion (Motion, 4:11), but her declaration is silent on that issue, stating only that she believed it was filed (N.G. Decl., ¶6), and none of the emails attached as Exhibit 3 to the Motion indicate it was filed.  On June 13 at 1:16 p.m., Trustee's counsel specifically notified Natasha Gill that no answer had yet appeared on the docket.  At that point, her declared belief that her answer had been filed was indisputably unreasonable.

Further, Natasha Gill now has the benefit of hindsight.  Ms. Gill might not have understood precisely why, on June 13, the Answer had not been filed on June 10, 11, or 12.  But Mr. Gill filed the Motion on July 30.  She appears to have made no attempt to understand what happened to herself or worse, to any of her clients.  Did First Legal err?  Natasha Gill does not say.  One searches for a statement about a misunderstanding, or excuse as to why neither she nor First Legal filed an Answer on June 11, 12, or 13—all weekdays.  Natasha Gill states that she gave First Legal instructions to file a paper copy (N.G. Decl., ¶5), but all of the attached emails are dated June 10; there is no explanation as to why the paper filing did not occur at some point over the next three days.

Further, Natasha Gill is an attorney who knows about deadlines.  She knew the

deadline to respond to the Complaint, and apparently drafted a number of answers for clients she represented. There is no excusable neglect. Natasha Gill and her family made the tactical decision—at best—to wait to the very last possible moment to respond to the Complaint. At worst, they made the tactical decision to ignore the Trustee's complaints entirely, which in Natasha Gill's case appears to have extended to her clients. Natasha Gill had plenty of time to file an answer by June 13. She simply chose to not do that.

### C. Natasha Gill Has No Meritorious Defense To The Complaint

With regard to this second factor:

> A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy… . All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation is true' is not to be determined by the court when it decides the motion to set aside the default … . Rather, that question 'would be the subject of the later litigation.'

U.S. v. Signed Pers. Check, 615 F.3d 1085 at 1094.

The Complaint alleges numerous claims against Natasha Gill, some of which she disputes, and some which she does not. Natasha Gill has alleged zero facts that would constitute a defense to the Trustee's claim that she made post-petition transfers totaling $28,606.88 to herself, in violation of 11 U.S.C. §549. Natasha Gill does not even deny that those transfers occurred.

Nor has Natasha Gill alleged a single fact that would constitute a defense to the Trustee's claim that she along with Gladwin Gill diverted $444,452.39 of the Debtor's funds into Account 1578 and $760,357.28 into Account 3756. The Motion does not deny those accounts exist, that Ms. Gill was the signatory on Account 1578, and that she diverted the Debtor's income into those accounts.

The Motion does contain some boilerplate language regarding good faith, new value, and the Debtor's ordinary course of business:

> Here, Defendant has meritorious defenses to Plaintiff's claims. Defendant has a number of affirmative defenses listed in her Answer,

SFW 58281557v1                               10

> including Defendant and Debtor's good faith, transfers made for contemporaneous new value to the Debtor, and payments made in the ordinary course of business of the Debtor.

Motion, 8:7-10. But, what affirmative defense could possibly apply to Trustee's assertion that Natasha Gill made post-petition transfers of the Debtor's funds to herself? The only valid defense is that such transfers (i) were approved by this Court, or (ii) never occurred. Likewise, what defense can Ms. Gill possibly have to the allegations contained in paragraphs 35 to 42 of the Complaint, where the Trustee asserts that Gladwin Gill and Natasha Gill deposited $1.2 million of the Debtor's funds into Accounts 1578 and 3756? Not "good faith," and not "new value." Those monies should have been deposited into the Debtor's bank account at Citibank. The only viable response Ms. Gill could have to this allegation is that the Trustee is mistaken. Ms. Gill would be in a position to know, because she is a signatory on Account 1578. Did the Trustee make a single mistake in paragraphs 37 or 40 as to any of those 113 checks, either in the date, deposit amount, or name of the issuing party? Ms. Gill does not allege that.

Ms. Gill's declaration contains a bare statement that she possesses a defense, as follows:

> 8. The direct transfers that Plaintiff identifies in ¶¶52-56 of the Complaint were made for contemporaneous new value to the Debtor, representing reimbursement of expenses and compensation of services that I provided to the Debtor. The direct transfers to me were made in good faith, and in the ordinary course of Debtor's business, which I intend to demonstrate by evidence.

N.G. Decl., ¶8. This statement relates to only $166,677.10 of the total of $1,749,198 in transfers the Trustee seeks to avoid by way of the Complaint. This statement does not appear to relate to transfers made by the Debtor to California Hospice--$401,286.61 in transfers—because of the reference is to "direct transfers to me."

Natasha Gill's narrow focus on $166,677.10 in transfers made to herself personally indicates that Natasha Gill has read the Complaint, understands its assertions, and does not contest the avoidance of the remaining transfers. Specifically, she does not contest that she

SFW 58281557v1                    11

and Gladwin Gill diverted more than $1.2 million of the Debtor's income into Account 1578 and Account 3756. She does not contest the assertion that she committed bankruptcy fraud. By failing to contest those facts, she indicates she has no meritorious defense regarding the remaining $167,000 in direct transfers.

The burden is on Natasha Gill to present the "specific facts" that would constitute a defense to the Trustee's avoidance claim. She does not meet this burden. There is nothing in either the Motion or Ms. Gill's declaration that amounts to allegations of "sufficient facts that, if true, would constitute a defense" [U.S. v. Signed Pers. Check, *supra*]. The allegation that Ms. Gill provided $167,000 in services to the Debtor is not sufficient, because Ms. Gill must also show good faith. Ms. Gill not only fails to articulate how she possessed good faith, but her declaration and the proposed Answer demonstrate bad faith.

### D.  Requiring Litigation Will Prejudice The Trustee

"Prejudice requires greater harm than simply that relief would delay resolution of the case." Halper, 2019 WL 2762340 at *6 (*citing* Lemoge v. U.S., 587 F.3d 1188, 1196 (9th Cir. 2009). "Under *Falk*, the question for prejudice is whether the plaintiff's ability to pursue its claim will be hindered" and attorneys' fees incurred by the non-defaulting party "are a significant source of prejudice." Id. at *6 (citations omitted).

Here, the Trustee will be prejudiced if the Motion were granted in that he will be forced to incur attorneys' fees to litigate facts and issues for which Ms. Gill has no defense. California Hospice's bank statements, alone, are sufficient to show Ms. Gill's fraud, and Ms. Gill does not dispute their authenticity nor the Trustee's interpretation of those bank statements. Gladwin Gill and Natasha Gill looted the Debtor of all of its funds so that by the Petition Date, the Debtor had zero dollars. They continued to loot the Debtor post-petition. Because of them, the Chapter 7 estate is devoid of cash.

Granting the Motion will serve one purpose—delay and depletion of the limited assets of this Estate. Ms. Gill, the actual recipient of much of the Debtor's diverted cash, intends to use those stolen funds to litigate against the Trustee's attempt to recover post-petition transfers, to which she has no defense, and pre-petition transfers for which she

asserts a defense as to only $167,000. Natasha Gill chose to place the Debtor into bankruptcy proceedings, to obtain the benefits of bankruptcy. The cost is transparency. Now that transparency reveals the transfers Natasha Gill made to herself, in bad faith, there is no basis to set aside the default and litigate this case further.

## IV.

## CONCLUSION

Natasha Gill has utterly failed to demonstrate a lack of culpability or a meritorious defense. The burden is on Ms. Gill to meet all three of the *Falk* factors, and she does not meet any of them. If Ms. Gill wants the Court to take her at her word that she was the Debtor's CEO, but somehow not aware of more than $2 million of Debtor funds transferred or diverted into a company where she was the Vice-President, and had no knowledge of the Debtor's post-petition income or diversion of post-petition assets into Account 3756, then the Trustee requests that the Court require Ms. Gill to be present in Court and sworn in, so that the Trustee—or the Court--can ask her questions while under oath. The Trustee submits that no statements made by Ms. Gill, unless made under oath, should be accepted at face value.

Dated: August 7, 2024         **GREENSPOON MARDER LLP**

By: _____
Steven F. Werth
Attorneys for Howard M. Ehrenberg, Chapter 7 Trustee

SFW 58281557v1

13

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*): OPPOSITION TO MOTION TO SET ASIDE DEFAULT  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 7, 2024 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael Jay Berger on behalf of Defendant NATASHA GILL
michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com

Michael Jay Berger on behalf of Other Professional Michael Jay Berger
michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com

Howard M Ehrenberg (TR)
ehrenbergtrustee@gmlaw.com,
ca25@ecfcbis.com;C123@ecfcbis.com;howard.ehrenberg@ecf.courtdrive.com;Karen.Files@gmlaw.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Steven Werth on behalf of Plaintiff Howard Ehrenberg, Chapter 7 Trustee
steven.werth@gmlaw.com,
swerth@ecf.courtdrive.com;pdillamar@ecf.courtdrive.com,Karen.Files@gmlaw.com;patricia.dillamar@gmlaw.com

☐ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 7, 2024 | Denise Walker | /s/ Denise Walker |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**